UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LUIS A. REYES,

                                 Petitioner,

-against-

WILLIAM CONNOLLY, Superintendent,
Fishkill Correctional Facility,

                                 Respondent.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**07-CV-2468 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Pro se Petitioner Luis A. Reyes ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Petition (Docket Entry #1).) He is currently incarcerated at Fishkill Correctional Facility, serving two concurrent sentences of nine years. (Resp't Ex. A-5, Trial Transcript Part V ("Tr. V") 13.) In his petition, filed on June 18, 2007, Petitioner challenges his conviction in New York Supreme Court, Kings County for two counts of Robbery in the Second Degree, in violation of N.Y. Penal Law § 160.10(1). (Resp't Ex. A-4, Trial Transcript IV ("Tr. IV") 316.) For the reasons set forth below, his petition is DENIED.

**I.    BACKGROUND**

      On September 24, 2003, at about 5:00 P.M., Rondell Patterson and his cousin Rawlins Preudhomme were eating at a pizzeria on Utica Avenue in Brooklyn when Petitioner and another individual, Seon DeFreitas, entered the pizzeria, approached Patterson and Preudhomme and demanded their money and property. Petitioner and DeFreitas took money, jewelry, and a cell phone from them. (Resp't Ex. A-3, Trial Transcript III ("Tr. III") 11-14.)

After the incident, Patterson and Preudhomme flagged down Police Officer Cornelius O'Keefe ("Officer O'Keefe"). Patterson pointed out Petitioner and DeFreitas. O'Keefe then pursued Petitioner and arrested him. At the time of his arrest, Petitioner was carrying a cell phone that Preudhomme later identified as the phone that was taken from him at the pizzeria. (Id.)

Petitioner was charged by Kings County Indictment Number 6925/03 with two counts of Robbery in the Second Degree under Penal Law § 160.10(1), two counts of Robbery in the Third Degree under Penal Law § 160.05, two counts of Grand Larceny in the Fourth Degree under Penal Law § 155.30(5), and one count of Criminal Possession of Stolen Property in the Fifth Degree under Penal Law § 165.40. (Tr. IV 274-84.)

### A. Pre-Trial Proceedings

Before trial, defense counsel requested a Mapp hearing to determine whether Officer O'Keefe legally seized the cellular phone from Petitioner. Defense counsel would then move to preclude any testimony regarding the seizure. The prosecutor pointed out that the phone had been returned to the victim and subsequently lost. Therefore, he would not introduce the physical cellular phone into evidence; rather, O'Keefe would testify that he arrested Petitioner and pursuant to that arrest, he recovered a cellular phone from Petitioner. After hearing arguments from both sides, the court declined to hold a Mapp hearing because "[t]here is no subject matter upon which to have a hearing" as the prosecutor was not going to introduce the cellular phone into evidence. The court did not rule on whether it would allow O'Keefe's testimony regarding his arrest of Petitioner. (Resp't Ex. A-1, Trial Transcript Part I ("Tr. I") 2-4.)

2

Later, defense counsel again sought to exclude all testimony regarding the cellular phone, this time citing a violation of New York Penal Law § 450.10. Admitting such testimony, he argued, would be unduly prejudicial to Petitioner. As support for his assertion, defense counsel challenged the presumption that O'Keefe recovered stolen property:

> The jury does not get an opportunity to examine [the cellular phone] which would end up being key evidence in this case, because if the jury does not believe that this phone either was not the property of the complaining witness, it was not stolen and not recovered from [Petitioner], then that may sway the jury . . . that [Petitioner] is not involved in this case.

(Resp't Ex. A-2, Trial Transcript Part II ("Tr. II") 7-13.) In the alternative, defense counsel requested that the trial court provide appropriate instructions on how to deal with this lost evidence. In response, the prosecutor argued that there was no evidence of bad faith on the part of O'Keefe in not preserving the evidence. Furthermore, the prosecutor noted that any possible prejudice could be addressed by defense counsel's ability to cross-examine O'Keefe and to advance his theory regarding the cell phone on summation. Having listened to the parties' arguments, the court reserved decision. (Id.)

Prior to the start of the trial, after reviewing New York Penal Law § 450.10 and the applicable case law submitted by both sides, the court denied defense counsel's request to preclude testimony regarding the cellular phone. (Tr. III 2-3.)

### B.  Post-Trial Instructions, Verdict, and Sentencing

At the end of the trial, the court delivered its charge to the jury. The court explained to the jurors their obligation during deliberations to discuss the evidence and to keep an open mind. (Tr. IV 284-86.) In addition, the court also informed the jury that it could request a reread of any part of the testimony or the court's instructions. (Tr. IV 290.)

3

During deliberations, the jury made several requests to the trial court, including a request about "what constitutes a deadlock." (Tr. IV 302-04.) After the court addressed the jury's other requests, it responded to the jury's question regarding the definition of deadlock:

> I believe you had a third question. I think you used the word called deadlock. I have gone through my notes[;] you have deliberated on this case for approximately one hour, that being yesterday. . . . Even if it's more than an hour, I say to you, we are not even close to the word deadlock.
>
> I say to you, please deliberate during voir dire. We talked about deliberations and I said to you, please, exchange your ideas and I remember very clearly speaking to all of you in saying, deliberations mean an exchange of ideas, if we just shut down, we are not exchanging ideas. If we pull the curtain down, we're not exchanging ideas. Let's be open to our neighbors, to our colleagues, what do you have to say, what are your thoughts on this? I agree with you, I disagree with you. Whatever it happens to be but, first, let us please use the ears, that's where we hear. Let's listen to what our neighbor has to say, then let's speak to connect. Let's speak to be together with our colleagues, to exchange our own thoughts rather than blasting to be argumentative. Let us speak to exchange. Let us listen to hear, let us speak to exchange.
>
> We are very, very far from this word called deadlock. I see no need for this conversation. I trust we are all going to apply what we asked and all the attorneys asked, common sense. You have made a commitment to use the same skills you use in your everyday life that you would bring them here into this courtroom. We asked you not to bring in special knowledge or special expertise, but we did ask you to bring in here your common sense.
>
> I ask you, I beseech you, to return and start deliberations and I want to thank you very much. If there is anything we can do for you, we will make every good faith effort to do for you. If you need focused read back, if you need slower read back, you tell us what you need and I will consult with the attorneys and we will attempt to respond to your request, but I do want to say to you, very much, thank you. Thank you very much.

(Tr. IV 312-14.)

Later that day on March 19, 2004, the jury found Petitioner guilty on two counts of Robbery in the Second Degree. (Tr. IV 301, 316-19.) On April 13, 2004, Petitioner was sentenced to two concurrent terms of nine years imprisonment, followed by three years of post-release supervision. (Tr. V 1, 12-13.)

4

### C. Direct Appeal

On June 30, 2005, Petitioner, through counsel, appealed his conviction to the New York Supreme Court, Appellate Division, Second Department ("the Appellate Division"). (Affidavit of Diane R. Eisner (Docket Entry #3) ("Eisner Aff.") 7.) Petitioner raised three claims: (1) the trial court erred by failing either to preclude testimony or to give an appropriate instruction regarding the cellular telephone that was stolen, recovered by the police and returned to the victim without giving appellant notice and opportunity for examination as required by Penal Law § 450.10; (2) the trial court deprived Petitioner of his due process right to a fair trial by failing to instruct the jurors not to give up their individual beliefs when the jury asked the trial court to define "deadlock"; and (3) Petitioner's sentence of nine years imprisonment was excessive in light of his age, lack of felony record, and lack of history of violence. (Resp't Ex. B, Pet'rs App. Brief ("Ex. B") 15, 22, 25.) On March 14, 2006, the Appellate Division affirmed Petitioner's conviction, rejecting his first and third arguments on the merits, and finding that his second claim concerning the trial court's "deadlock" instruction was not preserved for appellate review. People v. Reyes, 810 N.Y.S.2d 371, 372 (N.Y. App. Div. 2d Dep't 2006). The New York Court of Appeals denied leave to appeal on June 5, 2006. People v. Reyes, 819 N.Y.S.2d 887 (N.Y. 2006).

### D. Federal Habeas Petition

Petitioner filed the instant Petition on June 18, 2007, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner raises the same three claims he argued on his direct appeal. (Petition 3.) Respondent filed a memorandum in opposition on September 11, 2007. (Resp't Mem. 1.) Petitioner has not filed any additional documents in reply.

## II. DISCUSSION

### A. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), if Petitioner's claims have been fully adjudicated on the merits in state court, habeas relief may be granted only if the state court's decision

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's decision is contrary to clearly established federal law as determined by the Supreme Court "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision "unreasonable applies" clearly established federal law if it "identifies the correct governing legal rule from [the] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407. Clearly established federal law refers to the holdings, as opposed to dicta, of Supreme Court decisions at the time of the relevant state-court decision. Yarborough v. Alvarado, 541 U.S. 652, 660-61 (2004). Therefore, a federal court "may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

An adjudication on the merits is a "substantive rather than a procedural, resolution of a federal claim." Sellan v. Kuhlman, 261 F.3d 303, 313 (2d Cir. 2001) (citations omitted). A state

court has adjudicated a state petitioner's claim on the merits when it "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Id. at 312. The state court's decision, however, need not "explicitly refer to either the federal claim or to relevant federal case law." Id. A decision on the merits triggers "the deference mandated under AEDPA." Id. at 310.

AEDPA establishes a deferential standard of review under which a federal court cannot issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411. At the same time, even though "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (citations and quotation marks omitted).

### B. Violation of Penal Law § 450.10

In his first claim, Petitioner asserts the trial court violated N.Y. Penal Law § 450.10. In particular, Petitioner contends the trial court should have either precluded testimony or given appropriate instructions regarding the cellular phone that was stolen, recovered by the police, and returned to the victim without giving Petitioner notice and opportunity for examination. (Petition 3.) Even if Petitioner is correct, the trial court's mistake would violate state law, not federal law. Reexamining "state-court determinations on state-law questions" is not the "province of a federal habeas court." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (noting that "[a] federal court conducting habeas review is limited to determining whether a petitioner's custody is in violation of federal law.") (emphasis added). Rather, a federal habeas court is "limited to deciding whether a conviction violated the

7

Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 68; see also 28 U.S.C. § 2254(a). Thus, this court cannot consider Petitioner's state law claim that the trial court violated Penal Law § 450.10.

Although Petitioner's argument regarding the cell phone is based entirely upon state law, the court liberally construes the Petition as raising a federal due process claim.[1] The trial court's failure either to preclude testimony or to give an appropriate instruction regarding the cellular telephone, however, does not rise to the level of a federal due process violation. The United States Supreme Court has held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988). This reasoning stems from the Court's unwillingness to "impose on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution." Id.

In the instant case, Petitioner alleges that he was deprived of due process when the police returned the cellular phone to Preudhomme without giving Petitioner notice and the opportunity to examine the phone. Crucially, Petitioner does not allege, and there is no evidence to suggest, that there was bad faith on the part of the police. Rather, O'Keefe testified that he returned the cellular phone to Preudhomme because if the phone had been vouchered as evidence, Preudhomme would not have had access to the cellular phone for up to a year. (Tr. IV 208-09.) Consequently, as Petitioner has not provided any evidence indicating bad faith on the part of the police, the Appellate Division's rejection of Petitioner's claim was not an unreasonable

---

[1] It does not appear that Petitioner raised this contention on direct appeal and thus has not properly exhausted his state remedies. Nevertheless, the court considers his claim on the merits. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

8

application of Arizona v. Youngblood, and accordingly, his federal due process claim must be denied by this court.

### C. Supplemental Instructions to the Jury

Petitioner also contends that his due process right to a fair trial was violated when the trial court issued supplemental instructions to the jury. Specifically, Petitioner alleges that the trial court failed to instruct the jurors not to give up their individual beliefs after the jury asked the trial court to define "deadlock." (Petition 3.) Essentially, Petitioner claims the trial court issued a coercive "Allen charge" that deprived him of due process.[2] An "Allen charge" describes the "type of supplemental instruction that is given to a deadlocked jury." Smalls v. Batista, 191 F.3d 272, 275 n.10 (2d Cir. 1999). It "reminds the jurors about the importance of obtaining a verdict and encourages jurors to listen 'to each other's arguments' while also emphasizing that 'the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows.'" Id. (quoting Allen v. United States, 164 U.S. 492, 501 (1896)). This court cannot review Petitioner's due process claim regarding the "Allen charge," however, because it has been procedurally defaulted.

Federal habeas review is precluded "when the last state court rendering a judgment in the case rests its judgment on a procedural default." Harris v. Reed, 489 U.S. 255, 262 (1989). The only exception to this rule requires the habeas petitioner to "show cause for the default and prejudice attributable thereto or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice."[3] Harris, 489 U.S. at 262. Thus, "as long as the state

---

[2] In his petition to this court, Petitioner contends that "in the face of a jury note asking the trial court to define 'deadlock,' the court's failure to instruct the jurors not to give up their individual beliefs deprived [Petitioner] of his due process right to a fair trial." (Petition 3.) Construing the Petition liberally, the court interprets this argument to assert a federal due process claim based on a coercive "Allen charge."

[3] The "fundamental miscarriage of justice" exception essentially requires that a petitioner demonstrate that he is actually innocent of the crime for which he has been convicted. See Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002). To demonstrate "actual innocence" the petitioner must come forward with new evidence and "must show

9

court explicitly invokes a state procedural bar rule as a separate basis for decision," federal habeas review is precluded, even if the state court considered the merits of a claim. Harris, 489 U.S. at 264 n.10.

In this case, the Appellate Division – the last state court to render a judgment – concluded that Petitioner's due process contention "is unpreserved for appellate review and, in any event, is without merit." Reyes, 810 N.Y.S.2d at 372. This language clearly invokes a procedural bar as an adequate and independent state law ground for rejecting Petitioner's claim. Federal courts may address a procedurally defaulted claim "only upon a showing of cause for the default and prejudice to the petitioner." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994). To establish cause for a procedural default, a petitioner must demonstrate "that some objective factor external to the defense impeded counsel's efforts to comply with the state's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Petitioner has failed to do so here. Similarly, Petitioner has presented no evidence demonstrating how the trial court's supplemental instructions were prejudicial against him. Rather, he merely reasserts his claim that the trial court's issuance of a coercive "Allen charge" violated his due process rights. (Petition 3.) As such, this court is unable to review his due process claim.

Even if Petitioner's claim were not procedurally barred, the court would reject it. His claim of a coercive "Allen charge" is meritless because the trial court did not issue an "Allen charge" at all. It merely declined to define the word "deadlock" in response to a note from the jury requesting the definition. The jury did not indicate that it was actually deadlocked. Rather, the jury simply wanted to know "what constitutes a deadlock." See Tr. IV at 304. Thus, the trial

---

that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995). In this case, Petitioner neither claims actual innocence nor presents new evidence. Even if he were to make such a claim, it would be unlikely to satisfy the demanding Schlup standard. See House v. Bell, 547 U.S. 518, 538 (2006) ("[T]he Schlup standard is demanding and permits review only in the extraordinary case.").

court's instructions for the jury cannot be interpreted as an "Allen charge" because it was not issued to a deadlocked jury. Accordingly, Petitioner's claim is denied as both procedurally barred and meritless.

### D.   Excessive Sentence

Finally, Petitioner claims his sentence of two concurrent terms of nine years imprisonment was excessive. In particular, Petitioner urges the court to consider his age, lack of felony record, and lack of history of violence. (Petition 3.) According to the Second Circuit, "[i]t is well settled that a sentence imposed within the limits of a statute cannot amount to cruel and unusual punishment." United States v. Dawson, 400 F.2d 194, 200 (2d Cir. 1968). Thus, "no federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).

Petitioner was convicted of two counts of Robbery in the Second Degree, a Class C violent felony offense, which is subject to a sentence of at least three and one-half years and a maximum of fifteen years imprisonment under New York law. N.Y. Penal Law § 70.02(1)(b) (2007). As Petitioner's sentence of two concurrent terms of nine years imprisonment falls within the range provided by state law, he is not entitled to habeas relief upon a claim that his sentence was excessive.

## III.  CONCLUSION

For the foregoing reasons, Petitioner's application for a writ of habeas corpus is DENIED. Because Petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability shall issue. 28 U.S.C. § 2253(c)(2); Lozada v. United States, 107 F.3d 1011 (2d Cir. 1997). The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and, therefore, in

11

forma pauperis status is denied for the purpose of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to close this case.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
July 3̶6̶, 2010

NICHOLAS G. GARAUFIS
United States District Judge